UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

NEVADA FAIR HOUSING CENTER, INC.,

    Plaintiff,

v.

CLARK COUNTY, a political subdivision of the State of Nevada, and BARBARA GINOULIAS, individually and in her capacity as Director of the Department of Comprehensive Planning,

    Defendants.

02:05-CV-00948-LRH-PAL

ORDER

Presently before the court are cross-motions for summary judgment (## 29, 30). The parties have filed oppositions (## 37, 38) and replies (## 42, 43). Also before the court is Nevada Fair Housing Center's ("NFHC") motion to strike (# 55). Clark County has filed an opposition (# 56).

**I. Factual Background**

NFHC brought this action pursuant to the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, to challenge a provision of the Clark County zoning ordinance. NFHC is a nonprofit Nevada corporation. One specific purpose of NFHC is to promote equal opportunity in the rental of housing and the elimination of all forms of illegal housing discrimination. Specific facts relating to the ordinance at issue and the relationship between the parties will be discussed below as necessary.

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

The primary issue that must be decided is whether various provisions of the Clark County Code violate the Fair Housing Act. However, Clark County has presented several defenses including mootness, standing, equitable estoppel, waiver, and res judicata. The court will address these issues first before determining whether the ordinance at issue is discriminatory.

**A. Mootness**

Clark County, in its reply points and authorities, argues that NFHC's claims are moot. Specifically, Clark County notes that it has recently enacted a new group home ordinance. "A claim is moot if it has lost its character as a present, live controversy. *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). "A federal court does not have jurisdiction 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (quoting *Church of Scientology v. United States*, 506 U.S. 9 (1992)). Here, NFHC is seeking, among other things, an award of damages. To the extent NFHC was damaged from the ordinance at issue in this case, it is entitled to seek relief. However, to the extent NFHC is seeking an injunction, such relief would be inappropriate in light of the fact that the allegedly discriminatory ordinance is no longer in place in Clark County. Therefore, the court finds that the present action is not moot.

**B. Standing**

Clark County argues that NFHC lacks standing to bring this action. Specifically, Clark County argues that "there is an obvious disconnect between the alleged discrimination and reason Plaintiff allegedly diverted resources." (Opp'n to Pl.'s Mot. for Partial Summ. Adjudication (# 37) at 17.) NFHC, on the other hand, argues that the evidence establishes that Clark County's

enactment of the ordinance caused injury to NFHC.

In determining whether NFHC has standing under the Fair Housing Act, the court must determine whether NFHC has "alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal court jurisdiction." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) (citations and internal quotations omitted). "[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). The expense of litigation alone is generally insufficient to constitute a "diversion of resources" under this test. *Id*.

NFHC's complaint alleges that it is a nonprofit Nevada corporation. "One of NFHC"s specific purposes and goals is the promotion of equal opportunity in the rental of housing and elimination of all forms of illegal housing discrimination." (First Am. Compl. (# 4) ¶ 4.) NFHC has presented evidence indicating that it has diverted resources to counteract the alleged discriminatory effect of the ordinance. (Pl.'s Mot. for Partial Summ. Adjudication (# 30), Decl. of Gail Burks, Ex. 1 ¶ 18.) According to the declaration of Gail Burks,

> NFHC has spent time and resources to (1) assist the [several] complainants in their efforts to become informed about and exercise their fair housing rights; (2) investigate, evaluate and determine the extent to which the County's zoning ordinance and enforcement of that ordinance violates the Fair Housing Act; (3) educate and perform outreach to the group home operators in Clark County to inform them of their fair housing rights; and, (4) protect the fair housing rights of their members, associates, and constituents from the continued discrimination by defendants based on disability. But for Clark County's discriminatory zoning ordinance, NFHC would not have diverted its resources to counteract that discrimination. The resources spent to perform these services were diverted from programs operated by NFHC.

*Id*. The court finds these allegations sufficient for purposes of standing. NFHC has alleged that the ordinance at issued caused it to devote resources to counteract the alleged discrimination. Such allegations demonstrate an injury beyond that of expenses incurred in the present litigation.

4

### C. Equitable Estoppel

Defendants argue that NFHC's claims should be dismissed because of equitable estoppel. Specifically, Defendants argue that NFHC "must have known at the time it completed its Impediments Analysis in 2004 that the Clark County group home ordinance, Ordinance 2771, violated the Fair Housing Act, but failed to inform Clark County." (Clark County's Mot. for Summ. J. (# 29) at 26.) NFHC, in opposition, argues that Defendants have failed to establish the elements of a defense of equitable estoppel.

"'Equitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct.'" *In re Harrison Living Trust*, 112 P.3d 1058. 1061-62 (Nev. 2005). The Nevada Supreme Court has identified four elements of equitable estoppel:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

*Id*. at 1062.

With respect to this case, the court must determine whether NFHC's conduct in previously analyzing impediments to housing for Clark County should equitably estop NFHC from bringing this action. As part of NFHC's activities, it has provided policy research in the form of an analysis of impediments to fair housing to local jurisdictions. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. (# 38), Decl. of Gail Burks ¶ 5.) "An analysis of impediments to fair housing is a report of impediments or barriers to fair housing opportunities in the community." *Id*. NFHC previously completed analysis of impediments studies for Clark County in 1995, 1997, and 1998 (revised July, 1998). *Id*. ¶ 6. In March, 2004, NFHC also completed a Regional Analysis of Impediments and Fair Housing Plan. *Id*. ¶ 7.

The 1997 Impediments Analysis suggested that Clark County "[p]rovide recommendations

5

for the dispersement of group homes concentrated in low to moderate income census tracts." (Exs. to Clark County's Mot. for Summ. J. (# 32), 1997 Fair Housing Impediments Analysis, Ex. B at 2520.) In 1997, Assembly Bill 118 ("A.B. 118") was introduced in the Nevada Legislature. (Exs. to Clark County's Mot. for Summ. J. (# 32), Bill Summary.) A.B. 118 required the city or county to review an application for a group home if such home would be located within 660 feet of an existing group home. *Id*. On March 26, 1997, Gail Burks ("Burks"), President and CEO of NFHC, wrote a letter to Nevada Assemblywoman Chris Giunchigliani that stated, in part, "[w]e agree with the concept of A.B. 118 in that it seeks to insure that group homes are disbursed rather than clustered in certain areas of town." (Exs. to Clark County's Mot. for Summ. J. (# 32), March 26, 1997 Letter.) On May 1, 1997, Burks wrote a second letter to Assemblywoman Giunchigliani that attached proposed language for defining the concentration of group homes in a neighborhood. (Exs. to Clark County's Mot. for Summ. J. (# 32), May 1, 1997 Letter.) The letter concluded by stating, "[t]he proposed protections offered by AB 118 are sorely needed." *Id*. In support of the present litigation, NFHC has filed an affidavit of Burks stating that her comments regarding A.B. 118 "did not suggest that a spacing requirement for group homes should be made part of the bill." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. (# 38), Decl. of Gail Burks ¶ 13.)

A.B. 118 was not enacted. However, in 1999 it was reintroduced as Assembly Bill 62 ("A.B. 62"). A.B. 62 was incorporated into Senate bill 391 and passed by the Nevada Legislature. Burks testified in favor of A.B. 62. As part of her testimony, Burks testified that a "spacing requirement can be allowed if a jurisdiction has a legitimate purpose for the requirement and if the requirement is not considered 'discriminatory on its face.'" (Exs. to Clark County's Mot. for Summ. J. (# 32), May 12, 1999, Minutes of the Senate Committee on Government Affairs at 401.) S.B. 391 amended section 278.021 of the Nevada Revised Statutes. The 1999 legislation provided that "if a subsequent application is submitted to operate an additional residential facility for groups at a location that is within 660 feet from an existing residential facility for groups, the governing

6

1  body shall review the application based on applicable zoning ordinances." (Exs. to Clark County's
2  Mot. for Summ. J. (# 32), Senate Bill No. 391.)
3        In 2001, the Nevada legislature amended Section 278.021 to mandate that "each governing
4  body shall establish by ordinance a maximum distance between residential establishments that is at
5  least 660 feet but not more than 1,500 feet." (Exs. to Clark County's Mot. for Summ. J. (# 32),
6  Assembly Bill No. 395.)   In June, 2002, Clark County increased the minimum distance between
7  group homes to 1,500 feet.
8        On April 25, 2002, Clark County and NFHC entered into a contract for development and
9  delivery of the analysis of impediments to fair housing and a fair housing plan. (Exs. to Clark
10 County's Mot. for Summ. J. (# 32), Contract for Analysis of Impediments to Fair Housing.)  State
11 and local governments are required to conduct such an analysis in order to receive certain federal
12 funding. 24 C.F.R. § 570.487 *et seq*. Pursuant to the contract, the analysis "shall be conducted in
13 accordance with the recommendations set forth in the Fair Housing Planning Guide of the U.S.
14 Department of Housing and Urban Development unless written direction is given otherwise by
15 OWNER." *Id*. at 905.  The Fair Housing Planning Guide includes zoning as a subject area for an
16 analysis of impediments. (Exs. to Clark County's Mot. for Summ. J. (# 32), Fair Housing Planning
17 Guide.)
18       The introduction to the Regional Analysis of Impediments identified one purpose of the
19 report "to outline past successes and changes in policies . . . that affect Fair Housing choice." (Exs.
20 to Clark County's Mot. for Summ. J. (# 32), Regional Analysis of Impediments.)  The Regional
21 Analysis of Impediments concluded that Clark County met or exceeded Federal standards in all
22 areas except those that were considered "under development." (Exs. to Clark County's Mot. for
23 Summ. J. (# 32), Regional Analysis of Impediments.)  NFHC has included an affidavit with its
24 motion indicating that the Regional Analysis of Impediments was not "intended to be a
25 comprehensive review of all local ordinances, activities and programs to guarantee that there have
26

7

been/are no ongoing violations." (Pl.'s Mot. for Partial Summ. Adjudication (# 30), Decl. of Gail Burks ¶ 16.)

In the case sub judice, the court finds the above summarized evidence insufficient to establish a defense of equitable estoppel. Although NFHC's Regional Analysis of Impediments indicated that Clark County met or exceeded Federal standards, there is no evidence of detrimental reliance. The evidence shows that Clark County relied on NFHC's analysis to obtain federal funds. However, Defendants have failed to show how such reliance is detrimental. Clark County has indicated that it would have changed its regulations had NFHC identified the spacing requirement as an impediment. There is no evidence in the record to substantiate this position.

**D. Waiver**

On April 25, 2002, Clark County and NFHC entered into a contract for development and delivery of the analysis of impediments to fair housing and a fair housing plan. (Exs. to Clark County's Mot. for Summ. J. (# 32), Contract for Analysis of Impediments to Fair Housing.) In that contract, NFHC agreed to "defend, indemnify, and hold harmless [Clark County] . . . from any liabilities, damages, losses, claims, actions or proceedings, including, without limitation, reasonable attorneys' fees, that are caused by the negligence, errors, omissions, recklessness or intentional misconduct of [NFHC] in the performance of this Contract." *Id*. In light of this provision, Clark County argues that NFHC's claims should be dismissed due to waiver. The court finds this provision inapplicable to the case at bar. There are no allegations in this case involving any claim that allegedly resulted from the conduct of NFHC in the performance of the contract.

**E. Res Judicata**

In its motion for summary judgment, Clark County argues that NFHC's claims are barred by claim preclusion and issue preclusion. In 2001, Clark County filed a declaratory action against several group home operators, including NFHC. On November 19, 2001, NFHC was dismissed from the case, before appearing, following a request from Clark County. On July 26, 2002, Clark

County obtained a default judgment against the remaining defendants in the case who had failed to appear.  In that order, the Nevada judge determined that neither the Nevada Revised Statutes nor the Fair Housing Act prohibit the Clark County Ordinance.

"Res Judicata 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceedings.'" *Granite Constr. Co. v. Allis-Chalmers Corp.*, 648 F.Supp. 519, 521 (D. Nev. 1986)  (Quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  Res Judicata takes on two different forms: claim preclusion and issue preclusion.  *Executive Mgmt., Ltd. v. Ticor Title Co.*, 963 P.2d 465, 473 (Nev. 1998).

"Pursuant to the rule of claim preclusion, '[a] valid and final judgment on a claim precludes a second action on that claim or any part of it.'" *Id.*  (citing *University of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994)).  "'Claim preclusion applies when a second suit is brought against the same party on the same claim.'" *Id*. (Quoting *In re Medomak Canning*, 111 B.R. 371, 373 n.1(Bankr. D. Me. 1990)).  The doctrine prevents relitigation of both those issues actually decided and those issues that could have been decided.  *Id*.

With respect to issue preclusion, "if an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties."  *Id*. (citations and internal quotations omitted).  Issue preclusion only applies to matters that were actually decided.  *Id*.  The applicable test for issue preclusion is as follows:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation.

*Executive Mgmt., LTD. v. Ticor Title Ins. Co.*, 823 P.2d 465, 835 (Nev. 1998).

Here, the court finds that this action is not barred by either issue preclusion or claim preclusion.  It is undisputed that NFHC was not a party to the state court judgment.  Furthermore,

9

1  there is no evidence that NFHC was in privity with any party to the state court proceeding or had a
2  relationship of substantial identity with a party to those proceedings. *See Paradise Palms*
3  *Community Ass'n v. Paradise Homes*, 505 P.2d 596, 599 (Nev. 1973) (With respect to claim
4  preclusion, "[a] privy is one who, after rendition of the judgment, has acquired an interest in the
5  subject matter affected by the judgment through or under one of the parties, as by inheritance,
6  succession, or purchase.").

### F. Clark County's New Ordinance

As previously mentioned, Clark County has recently enacted a new group home ordinance. Clark County is seeking summary judgment on its Counter-Claim for a judgment declaring the new group home regulations in compliance with the Fair Housing Act. However, at this time, Clark County has not demonstrated an actual controversy relating to the recently enacted ordinance that would warrant declaratory relief.

### G. Clark County's Group Home Ordinance

NFHC is seeking partial summary adjudication arguing that the Clark County group home ordinance is facially discriminatory because "it provides that six non-disabled, unrelated adults may live together at *any* location without acquiring any permit, while *no* group of three to six disabled, unrelated adults may live together within 1500 feet of an existing group home without obtaining a special use permit." (Pl.'s Mot. for Partial Summ. Adjudication (# 30) at 10.) Therefore, according to NFHC, groups of three to six disabled, unrelated adults are treated differently by the terms of the code than groups of three to six non-disabled, unrelated adults. As a result, NFHC argues that the ordinance violates 42 U.S.C. §§ 3604(f)(1) and 3604(c). Defendants Clark County and Barbara Ginoulias ("Defendants") oppose NFHC's motion arguing that NFHC misinterprets the county ordinance at issue. Alternatively, Defendants argue that a legitimate non-discriminatory reason exists for Clark County's group home regulations. In addition, Defendants argue that NFHC lacks standing to assert a discrimination claim.

Pursuant to Section 278.021(4) of the Nevada Revised Statutes, a county whose population is 100,000 or more is required to "establish by ordinance a minimum distance between residential establishments that is at least 660 feet but not more than 1,500 feet." Nev. Rev. Stat. § 278.021(4). A "residential establishment" is defined as "a home for individual residential care in a county whose population is 100,000 or more, a halfway house for recovering alcohol and drug abusers or a residential facility for groups." Nev. Rev. Stat. § 278.021(7)(d).

On January 17, 2001, Clark County enacted zoning restrictions on the location of group homes. At the time relevant to this litigation, Section 30.44.020 of the Clark County Code provided that a group home "[m]ust maintain a minimum separation of 1500 feet (measured radially) from any existing group home. . . (See NRS 278.021). If a special use permit is submitted to waive this standard, the Commission or Board shall approve the use permit if" several requirements are met. Clark County Code § 30.44.020. Section 4 of the group home ordinance provides that group homes "[m]ust be licensed or certified by the Nevada State Department of Human Resources prior to commencing the use if required. A business license and/or building permit may be issued prior to state approval." *Id*. Section 30.08.030 defines group home as,

> a dwelling unit in which more than two disabled adults (unless the disabled adults are related within the third degree of consanguinity) reside, which may include house parents or guardians and persons related to the house parents or guardians within the third degree of consanguinity, who need not be related to any of the disabled adults.

Clark County Code § 30.08.030. According to the code,

> "[d]isabled" means, with respect to a person, a physical or mental impairment that substantially limits one (1) or more of such person's major life activities, having a record of such an impairment and/or being regarded as having such an impairment. This term does not include current illegal use or of addiction to a controlled substance (see "Family").

*Id*. The Clark County Code further states that, "[i]n no case shall more than six adults occupy a dwelling." Clark County Code § 30.56.130. However, "[t]he Commission or Board may consider increasing the occupancy standards for handicapped adults with the approval of a special use

11

permit, subject to the standards listed in Table 30.44-1 for group homes." *Id*.  Section 3 of the group home ordinance discusses the occupancy standard and provides, "there will be adequate parking based on the number of occupants physically or mentally capable of operating an automobile as well as automobiles expected to be utilized by staff regularly managing or serving the occupants."  Clark County Code § 30.44.020.

The Fair Housing Act provides, in part,

> it shall be unlawful. . . [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter, (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1).  Section 3604(c) provides,

> it shall be unlawful. . . [t]o make, print, or publish or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).  The act defines "handicap" to mean

> with respect to a person – (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.

42 U.S.C. § 3602(h).

In the present motion, NFHC is making a facial challenge to the Clark County ordinance.  A facially discriminatory policy is one which on its face applies less favorably to a protected group."  *Community House, Inc. v. City of Boise, Idaho*, 468 F.3d 1118, 1123 (9th Cir. 2006) (citing *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000)).  "With regard to facially discriminatory housing policies, . . . 'a plaintiff makes out a prima facie case of intentional discrimination under the [Fair Housing Act] merely by showing that a protected group has been subjected to explicitly differential-i.e. discriminatory-treatment.'" *Id.* at 1125 (citing *Bangerter v. Orem City Corp.*, 46

12

F.3d 1491, 1501 n.16 (10th Cir. 1995)). "To allow the circumstance of facial discrimination . . . , a defendant must show either: (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Id*. (citations omitted).

In the case at bar, the court finds that Clark County's group home ordinance is facially discriminatory. The ordinance explicitly discriminates against disabled adults by implementing a spacing requirement that does not apply to similarly situated non-disabled adults. As discussed above, the ordinance defines a "group home" as a dwelling unit in which more than two unrelated disabled adults reside. Clark County Code § 30.08.030. Therefore, the express terms of the group home ordinance prevents more than two unrelated-disabled adults, without a use permit, from living together within 1,500 feet of another dwelling in which more than two other unrelated-disabled adults reside. Clark County Code § 30.44.020. There is no provision, however, that would prevent more than two unrelated non-disabled adults from living within 1,500 feet of a dwelling in which more than two other unrelated non-disabled adults reside.

In opposition to the motion, Clark County argues that the ordinance applies only to "group home operators, that is, establishments in the business of providing housing and services to dependent disabled persons." (Clark County's Opp'n to Pl.'s Mot. for Partial Summ. Adjudication (# 37) at 2.) The court disagrees. Although Section 30.44.020 makes a reference to Section 278.021 of the Nevada Revised Statutes, there is nothing in the ordinance that limits its application to establishments in the business of providing housing and services to dependent disabled persons. Moreover, Section 278.021 of the Nevada Revised Statutes does not define the term "group home" nor does the Clark County ordinance incorporate any provision of the Nevada Revised Statutes.

Similarly, the court finds no support for Clark County's position in either section 3 or 4 of the ordinance. Section 4 of the group home ordinance provides that the group home "[m]ust be licensed or certified by the Nevada State Department of Human Resources prior to commencing the

use *if required*." Clark County Code § 30.44.020 (emphasis added). Thus, section 4 of the ordinance does not mandate the licensing of all group homes. Section 4 only mandates that the group home be licenced or certified "if required." Finally, the court finds that the language of section 3, providing that adequate parking is available for staff regularly managing or serving the occupants, does not limit the scope of the ordinance to a group home business. There is nothing in Section 4 that requires group homes to employ staff members. *See* Clark County Code § 30.44.020.

Because the ordinance at issue is facially discriminatory, summary judgement is appropriate unless Clark County can show that the restriction benefits the disabled or that it responds to legitimate safety concerns raised by the individuals affected. *Community House, Inc.*, 468 F.3d at 1125. Clark County argues that the spacing requirement is justified in order to comply with the mandate of the state of Nevada. In addition, Clark County argues that the group home ordinance promotes the goel of preventing the clustering of group homes in certain areas. The court finds neither justification sufficient to show that the ordinance benefits the disabled or that it responds to a legitimate safety concern.

With respect to the Nevada mandate, the court notes that the issue of whether Section 278.021 of the Nevada Revised Statutes complies with the Fair Housing Act is not before the court. Nevertheless, the Clark County Ordinance does not track the language of Section 278.021. In fact, Section 278.021 does not refer to the term "group home." Nev. Rev. Stat. § 278.021. Moreover, Section 278.021 does not require Clark County to treat more than two unrelated disabled adults living together differently from more than two unrelated non-disabled adults living together. Finally, Clark County has not presented evidence that its ordinance promotes deinstitutionalization.

### H. NFHC's Request for Judicial Notice

NFHC has filed a request for judicial notice of a Clark County ordinance, Clark County Code, and sections of the Nevada Revised Statutes. Rule 201 of the Federal Rules of Evidence

provides for judicial notice of adjudicative facts. Fed. R. Evid. 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the court appreciates courtesy copies of the ordinance at issue, "the manner in which law is fed into the judicial process is never a proper concern of the rules of evidence but rather the rules of procedure." Fed. R. Evid. 201 advisory committee's note. Therefore, NFHC's request is denied. Nevertheless, the court will determine and apply the applicable law relevant to this case.

**IV. Conclusion**

Based on the foregoing discussion, the Clark County Code provisions at issue in this case violate the Fair Housing Act by discriminating against individuals with disabilities.

IT IS THEREFORE ORDERED that NFHC's Motion for Partial Summary Adjudication (# 30) is hereby GRANTED.

IT IS FURTHER ORDERED that Clark County's Motion for Summary Judgment (# 29) is hereby DENIED.

IT IS FURTHER ORDERED that NFHC's motion to strike (# 55) is hereby DENIED.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from the date of this order within which to lodge with the court a proposed written joint pretrial order.

IT IS SO ORDERED.

DATED this 22nd day of February, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE