UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA FAIR HOUSING CENTER, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CLARK COUNTY, etc., et al., ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> CLARK COUNTY, a political subdivision of ) <br> the State of Nevada, ) <br> ) <br> Counter-Claimant, ) <br> ) <br> v. ) <br> ) <br> NEVADA FAIR HOUSING CENTER, INC., ) <br> a Nevada non-profit corporation, ) <br> ) <br> Counter-Defendant. ) <br> _____ ) | 02:05-CV-00948-LRH-PAL <br><br> ORDER |

    Before the court are Plaintiff Nevada Fair Housing Center, Inc.'s ("NFHC") motion for partial summary judgment (#78[1]) and motion to strike the affidavit of Assemblywoman Marilyn Kirkpatrick (#86[2]). Defendant Mike Willden ("Willden"), the Director of Nevada's Department of

---

[1] Refers to court's docket number.

[2] The motion to strike, raised in NFHC's reply, concerns points and authorities first presented in Willden's response to the motion for partial summary judgment.

Health and Human Services, has responded (#85), and NFHC has replied (#86).

## I. Procedural History

NFHC filed this facial challenge to Nevada's group home statute, Nev. Rev. Stat. § 278.0238-278.02388 ("group home statute"), alleging that the statute discriminates against disabled persons in violation of the Fair Housing Amendments Act, 42 U.S.C. §§ 3600-3631 ("FHAA"). Prior to this filing, NFHC sued Clark County for similar reasons based on the county's group home ordinance. (Am. Compl. (#4) at 9.) This court granted NFHC's motion for partial summary judgment, finding that the county ordinance's spacing requirements–mandating a minimum of 1,500 feet between group homes–were facially discriminatory in violation of the FHAA. (Feb. 22, 2007, Order (#57) at 13.)

As NFHC and Clark County pursued negotiations on how to revise the county's group home ordinance, the Nevada Legislature enacted Assembly Bill 463 ("A.B. 463"), Nevada's group home statute. (Mot. for Part. Summ. J. (#78) at 4.) The statute rendered the negotiations with Clark County moot. *Id*. This court granted NFHC and Clark County leave to file a supplemental complaint adding Willden, the Director of the Nevada Department of Health and Human Services, as a necessary party. (June 21, 2007, Order (#63).) Following the filing of the supplemental complaint and Willden's answer, NFHC moved for partial summary judgment against Willden. This court subsequently granted Willden and NFHC's stipulation to suspend enforcement of the group home statute until this court enters judgment on NFHC's challenges. (Dec. 27, 2007, Order (#84).)

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together

2

with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

## III. Discussion

### A. Nevada's Group Home Statute

The FHAA is intended to equalize housing opportunities for, among other protected groups, the handicapped.[3] *See Garcia v. Brockway*, 526 F.3d 456, 467 (9th Cir. 2008). Under the FHAA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). As defined in the FHAA, a "handicap means, with respect to a person, (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment" but excluding current, illegal use of a controlled substance. 42 U.S.C. § 3602(h). In addition, the FHAA prohibits any interference with the "exercise or enjoyment" of "any right granted by [§ 3604]." 42 U.S.C. § 3617. The FHAA expressly preempts state laws requiring or permitting violations of § 3604 or § 3617. 42 U.S.C. § 3615.

In an action under the FHAA, a plaintiff may prevail on any one of three theories: (1) disparate treatment, also called intentional discrimination; (2) disparate impact, also called discriminatory effect; and (3) failure to reasonably accommodate. *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500-02 (10th Cir. 1995). A plaintiff challenging a law that "facially single[s] out the handicapped and appl[ies] different rules to them" states a claim for disparate treatment. *Id.* at 1500. Though a benign legislative intent does not convert a facially discriminatory law into a neutral law, a defendant may justify a facially discriminatory law by showing "(1) that the restriction benefits the protected class or (2) that [the restriction] responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House,*

---

[3]NFHC points out that the preferred terminology is "disabled" rather than "handicapped." *Giebeler v. M&B Associates*, 343 F.3d 1143, 1146 (9th Cir. 2003). However, in line with the parties' filings and the terminology of the FHAA, the court will use the term "handicapped" in this order.

4

1  *Inc. v. City of Boise*, 490 F.3d 1041, 1049-50 (9th Cir. 2007).

2  The Nevada Revised Statutes set forth spacing requirements for "residential establishments" and registry requirements for "group homes." Nev. Rev. Stat. §§ 278.02386(3), 278.02387. Specifically, the group home statute applies a minimum 1,500 foot spacing requirement between residential establishments. Nev. Rev. Stat. § 278.02386(3). A "residential establishment" is (1) a home for individual residential care in a county whose population is 100,000 or more, (2) a halfway house for recovering alcohol and drug abusers, or (3) a residential facility for groups. Nev. Rev. Stat. § 278.02384. In addition, counties and cities are directed to collect information on group homes, defined as residential establishments or similar facilities, and transmit this information to Nevada's Health Division. Nev. Rev. Stat. § 278.02387. The Health Division then compiles a registry of group homes available via the internet to local governments, agencies that provide fire, police, or other emergency services, and the public. Nev. Rev. Stat. § 278.02387. The spacing and registry requirements are enforced through zoning and the granting of licenses, variances, and special use permits. Nev. Rev. Stat. §278.02388.

Nevada's group home statute facially discriminates against the handicapped. First, the statute singles out the handicapped through the definition of "residential establishment." Second, the statute treats the handicapped differently than similarly situated non-handicapped classes. Finally, Nevada, through Willden, has provided no justification for this facially discriminatory treatment. Therefore, the FHAA preempts Nevada's group home statute.

First, in defining the residences to which the group home statute applies, the statute singles out homes for the handicapped. Nevada's statute, like those of other jurisdictions, uses a seemingly neutral term whose definition coincides with "place where handicapped persons reside." *See Cmty. Hous. Trust v. Dep't of Consumer and Regulatory Affairs*, 257 F. Supp. 2d. 208, 221-22 (D.D.C. 2003) ("community based residential facility")*; Alliance for Mentally Ill v. City of Naperville*, 923 F. Supp. 1057, 1070 (N.D. Ill. 1996), *abrogated on other grounds by Hemisphere Bldg. Co., Inc. v.*

5

*Village of Richton Park*, 171 F.3d 437 (7th Cir. 1999) ("Residential Board and Care Occupancy"); *Horizon House Dev. Servs., Inc. v. Twp. of Upper Southampton*, 804 F. Supp. 683, 689-90 (E.D. Pa. 1992) ("family care home"). Nevada's term is "residential establishment." Nev. Rev. Stat. § 278.02384.

The definition of "residential establishment" includes a home for "individual residential care" in which a natural person furnishes food, shelter, assistance and limited supervision, for compensation, to two or fewer persons with "mental retardation or with disabilities or who are aged or infirm." Nev. Rev. Stat. § 449.0105. A home for individual residential care is thus a facility designed to assist those, including the aged and infirm, who have substantial impairments in "major life activities" like caring for one's self. The residents of such a facility fall within the definition of "handicapped" under the FHAA. *See* 29 C.F.R. § 100.201(b) (defining "substantial impairment" and "major life activities" under the FHAA).

A halfway house for recovering drug and alcohol abusers, also included in the definition of "residential establishment," is a residence designed to "facilitate [the abusers'] reintegration into the community" but does not provide treatment for abuse or transitional living for released offenders. Nev. Rev. Stat. § 449.008. Under the FHAA, however, "the term physical or mental impairment includes . . . drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism." 24 C.F.R. § 100.201(a). Though the FHA explicitly excludes "current, illegal use" and the Nevada statute does not, the use of the term "*recovering* drug and alcohol abusers" indicates an implicit exclusion of current, illegal use by the residents of a halfway house for abusers. Nev. Rev. Stat, § 449.008 (emphasis added). Therefore, the residents of a halfway house for recovering drug and alcohol abusers fall within the definition of "handicapped" under the FHAA.

A residential facility for groups, the final set of residences denoted by "residential establishment," is an expanded home for individual residential care. The group facility is an

6

1  establishment that "furnishes food, shelter, assistance, and limited supervision to a person with
2  mental retardation or with a disability or a person who is aged or infirm." Nev. Rev. Stat. §
3  449.017. The term "residential facility for groups" includes, "without limitation," assisted living
4  facilities. *Id.* Elsewhere in the group home statute, a residential facility for groups with "10 or
5  fewer unrelated persons with disabilities" is contrasted with a larger such facility. Nev. Rev. Stat. §
6  278.02386(1). Since the only relevant differentiating metric for "residential facilities for groups" in
7  the group home statute is the *number* of disabled residents, rather than the *status* of their disability,
8  the term "residential facility for group" presupposes disabled residents. *See State Farm Mut. v.*
9  *Comm'r of Ins.*, 958 P.2d 733, 737 (Nev. 1998) (noting that the meaning of a statute may be
10 determined by referring to laws which relate to the same person or things, to the same class of
11 persons or things, or have the same purpose or object). In addition, the same analysis used for a
12 home for individual residential care demonstrates that the residents of such a group facility fall
13 within the definition of "handicapped" under the FHAA.
14         Second, Nevada's group home statute applies different rules to "residential establishments"
15 than it applies to similar entities without handicapped residents. A home for individual residential
16 care, a halfway house for recovering drug and alcohol abusers, and a residential facility for groups
17 with ten or fewer residents are all "single family residences" under Nevada law. Nev. Rev. Stat. §
18 278.03286(1). However, these single family residences are subject to a spacing requirement of "at
19 least 1,500 feet but not more than 2,500 feet" between each other where other single family
20 residences are not. Nev. Rev. Stat. § 278.03286(3). Therefore, the spacing requirement treats
21 people with disabilities differently than people without disabilities. *See Larkin v. State of Michigan*
22 *Dep't of Social Servs.*, 89 F.3d 285, 292 (6th Cir. 1996) (invalidating a 1,500 foot spacing
23 requirement for group homes); *Horizon House*, 804 F. Supp. at 695 (invalidating a 1,000 foot
24 spacing requirement for group homes).
25         In addition, the group home statute requires Nevada's Health Division to compile and
26

maintain a registry of residential establishments and "[a]ny other home . . . whether or not it is licensed . . . that provides to four or more unrelated persons services similar to those provided by a residential establishment." Nev. Rev. Stat. §§ 278.02387(3), 278.02387(6). This registry provides information to "police, fire-fighting, rescue, or emergency medical services" and is available to the general public through a website operated by Nevada's Health Division. Nev. Rev. Stat. § 278.02387(4). However, other facilities housing groups without disabilities are not required to register with any state agency. For example, Nevada law does not require the creation of a registry of foster homes, *see* Nev. Rev. Stat. ch. 424, or apartment complexes, *see* Nev. Rev. Stat. ch. 278. Moreover, while licensing information is available to the general public, the group home statute requires the registration of even unlicensed facilities, whether "operated formally or informally and by whatever name [they] may be known." Nev. Rev. Stat. § 278.02387(6). Thus, the registry requirement treats housing for the disabled differently than housing for those without disabilities. *See Larkin*, 89 F.3d at 292 (invalidating "notification" requirements for group homes); *Potomac Group Home Corp. v. Montgomery County, Maryland*, 823 F. Supp. 1285, 1295 (D. Md. 1993) (invalidating notice to neighbors provision as facially discriminatory).

Willden argues in response that "the distance requirements in question apply to an assortment of facilities" and that "[n]ot all of those facilities house the disabled; only some of them do." (Opp'n to Mot. for Part. Summ. J. (#85), at 3.) Thus, the group home statute is not facially discriminatory because it does not single out persons with disabilities for the purposes of the FHAA. *Id*. The court disagrees. First, Willden relies on *Wind Gap* for the proposition that homes for the elderly, the homeless, victims of domestic violence, or ex-criminal offenders might all fall within the definition of "residential establishment." *Id*. at 6. However, the *Wind Gap* analysis is not applicable to the Nevada statute.

In *Wind Gap*, the court analyzed the undefined statutory term "personal care home" as it applied to sewer hook-up fees. *Wind Gap*, 421 F.3d at 179. The court determined that absent

statutory definition, the term "personal care home" could apply to various homes for the non-handicapped. *Id*. ("Without *any* context to inform our interpretation of this term, 'personal care home' could fairly be used to describe any number of facilities providing services to residents who may not necessarily have [a disability].").

In contrast to the statute challenged in *Wind Gap*, the Nevada statute provides a definition of "residential establishment" that singles out those who suffer a handicap under the FHAA. For example, "residential establishments" include only those "elderly" who require "assistance" and "limited supervision." Nev. Rev. Stat. §§ 449.0105, 449.017. Transitional homes for "ex-criminal offenders" are explicitly excluded from the term "residential establishment." Nev. Rev. Stat. § 449.008. Similarly, other Nevada statutes and agency regulations define group living for "victims of domestic violence" and the "homeless," foreclosing the possibility that such group facilities are contemplated within "residential establishments," *see* Nev. Rev. Stat. §§ 217.410 (victims of domestic violence); § 244.422 (shelter for homeless youth); Nevada Housing Division Emergency Shelter Grant Program, http:// www.nvhousing.state.nv.us /emer_shelter / homeless%20assistance%20old.htm (last visited June 25, 2008) (homeless shelters include "domestic violence shelters, Friends in Service Helping (FISH) and local social service agencies").

Second, even if the term "residential establishment" did extend to cover some residences for the non-handicapped, the statute would remain facially discriminatory. If a statute "incidentally catch[es] within its net some unrelated groups of people without handicaps, such as juveniles or ex-criminal offenders, that live in supervised housing arrangements," it may be facially discriminatory under the FHAA. *Horizon House*, 804 F. Supp. at 694; *Alliance for Mentally Ill*, 923 F. Supp. at 1070. That "discrimination 'because of' handicap is frequently directed at an effect or manifestation of a handicap," such as assisted or supervised living, rather than the handicap itself does not nullify the discrimination. *Alliance for Mentally Ill*, 923 F. Supp. at 1070. Nevada's group home statute is largely directed at assisted or supervised living, and the inclusion of some

non-handicapped class living in assisted housing does not neutralize the statute's facial discrimination.

Third, while Willden insists that the statute's intent "was to reach out and put some level of accountability on aggregate living situations that were housing a variety of nonrelated persons," (Opp'n to Mot. for Part. Summ. J. (#85) at 3), evidence from the statute's history shows that animus towards the handicapped may have partly motivated A.B. 463. "Although a plaintiff need not prove–and consequently, a court need not find–malice or discriminatory animus of a defendant under a facial discrimination claim . . . evidence of some intent to disadvantage a class of people makes the determination of the basis for the overt disparate treatment much easier." *Wind Gap*, 421 F.3d at 182 (internal quotations and citations omitted). In discussions on the Bill, Nevada legislators describe group homes as "encroaching" upon neighborhoods and as having a "negative effect on property values." NV Assem. Comm. Min., 74th Sess., 3/28/2007; NV S. Comm. Min. 74th Sess., 5/7/2007. Moreover, this legislative distaste directly addresses the handicaps of group home residents. For instance, legislators worried about limiting the total number of residential establishments in a community.

> Assemblyman Mulford:
>
> In my district we have quite a few drug and alcohol rehabilitation type establishments. Is there a certain number that a community can have?
>
> Assemblywoman Kirkpatrick
>
> It is a fine line you have to walk with the Fair Housing Act. We do not want to put the State in a federal court case. . . .

NV Assem. Comm. Min., 74th Sess., 3/28/2007. However, "[t]he FHAA rejects any notion that a Township can somehow avoid the anti-discrimination mandate by accepting some sort of 'fair share' or apportionment of people with disabilities." *Horizon House*, 804 F. Supp. at 698. In addition, while Assemblywoman Kirkpatrick insists that "we have to put some type of data in place so we can verify these people are getting the services they deserve and the safety they are allowed," she admits that the

10

group home statute does not directly affect the services or the safety of residential establishments.

> Assemblyman Beers:
>
> Is there a mechanism in this bill that says how the quality of care regarding the residents is to be monitored, or does that come under another statute that ties into this one?
>
> Assemblywoman Kirkpatrick:
>
> There are a couple of other bills that do that. . . .

NV Assem. Comm. Min., 74th Sess., 3/28/2007.  Statements like these suggest that safety concerns may not be the "true reason" for the spacing and registry requirements.  *Larkin*, 89 F.3d at 291.

Finally, Willden has not offered an explanation that the statute benefits the handicapped or responds to legitimate safety concerns (rather than being based on stereotypes) in justification for the group home statute's facial discrimination.  *City of Boise*, 490 F.3d at 1049-50.  Though Willden does insist that the statute's intent was to impose accountability on "aggregate living situations," Willden nowhere justifies the statute by citing handicap-specific benefits or handicap-specific safety concerns.  As a facially discriminatory statute without justification violates the FHAA, Nevada's group home statute is preempted.

**B.  Motion to Strike**

NFHC also moves to strike the affidavit of Assemblywoman Kirkpatrick (Opp'n to Mot. for Part. Summ. J. (#85), Ex. A) because legislative motive is irrelevant to NFHC's facial challenge and because Nevada law prohibits the use of a legislator's affidavit's to "divine legislative intent." (Rep. to Willden's Opp'n & Mot. to Strike (#86) at 10.)  Rule 12(f) of the Federal Rules of Civil Procedure allows a court to grant a motion to strike if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. Pro. 12(f).  A defense that would not, under the facts alleged, constitute a valid defense to the action can and should be deleted.  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d. ed. 2004).  "Immaterial" matter is that which has "no essential or

important relationship to the claim for relief or the defenses being pleaded." *Id*. A 12(f) motion is a drastic remedy and is generally disfavored by federal courts. *Germine Music v. Universal Songs of Polygram*, 275 F.Supp.2d 1288, 1300 (D. Nev. 2003).

NFHC is correct that Nevada law prohibits the use of an affidavit by a bill's author to divine legislative intent. Since federal courts use the applicable state rules of statutory construction to analyze state laws, *Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 510 (9th Cir. 1990), Nevada law governs the construal of Nevada's group home statute. The Nevada Supreme Court has held, "[i]n construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it . . . nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy." *A-NLV Cab Co. v. State, Taxicab Auth.*, 825 F.2d 585, 587 (Nev. 1992) (internal citations omitted). Here, Assemblywoman Kirkpatrick's affidavit is advanced precisely to illuminate legislative intent. (Opp'n to Mot. for Part. Summ. J. (#85) at 9.) Therefore, Assemblywoman Kirkpatrick's affidavit does not constitute a valid defense to the facial discrimination claim.

However, though legislative motive is irrelevant to a facial challenge, *Johnson Controls*, 499 U.S. at 199-200, "evidence of some intent to disadvantage a class of people makes the determination of the basis for the overt disparate treatment much easier." *Wind Gap*, 421 F.3d at 182. Here, Assemblywoman Kirkpatrick's affidavit is relevant to rebut the legislative animus that may make NFHC's showing of facial discrimination easier. (Opp'n to Mot. for Part. Summ. J. (#85) at 9.) Therefore, the affidavit is not "immaterial" to the facial challenge, and the motion to strike is not warranted.

**IV.   Conclusion**

Nevada's group home statute is facially discriminatory with regard to the spacing and registry requirements and any statutory mechanisms enforcing these requirements. Therefore,

summary judgment is warranted. Assemblywoman Kirkpatrick's affidavit is relevant to rebut inferences of animus towards the handicapped, and therefore the court declines to strike it.

Finally, it appears that the only remaining issue relates to damages. As the parties have indicated summary judgment on the present motion would likely obviate the need for trial (Dec. 14, 2007, Status Report (#81) at 2), the clerk will enter judgment in favor of NFHC unless the parties identify any remaining issues within twenty (20) days from the issuance of this order.

IT IS THEREFORE ORDERED that NFHC's motion for partial summary judgment (#78) is hereby GRANTED.

IT IS FURTHER ORDERED that NFHC's motion to strike (#86) is hereby DENIED.

IT IS SO ORDERED.

DATED this 9th day of July 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE